UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------X

TREVOR G. GOULBOURNE, JR.,

        *Plaintiff*,

   -against-

                                 **MEMORANDUM AND ORDER**

                                 18-CV-2377 (KAM)

ANDREW M. SAUL,[1]
COMMISSIONER OF SOCIAL SECURITY,

        *Defendant*.

--------------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

        Plaintiff Trevor Goulbourne, Jr. ("plaintiff") appeals the final decision of the Commissioner of Social Security ("defendant" or the "Commissioner"), which found that plaintiff was not disabled, and therefore not entitled to Supplemental Security Income benefits or disability insurance benefits under Title II of the Social Security Act (the "Act"). Plaintiff moved for judgment on the pleadings, contending that the Administrative Law Judge ("ALJ") failed to follow the treating physician rule in weighing the medical opinion evidence,

---

[1] Andrew M. Saul is now the Commissioner of Social Security. Pursuant to the Federal Rules of Civil Procedure, Rule 25(d), Andrew M. Saul should be substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence in section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

improperly discounted medical source statements from consultative examiners, improperly assessed plaintiff's credibility, and that the ALJ's residual functional capacity ("RFC") determination was not supported by substantial evidence. Defendant cross-moved for judgment on the pleadings.

For the reasons herein, plaintiff's motion for judgment on the pleadings is GRANTED, the defendant's motion is DENIED, and the case is REMANDED for further proceedings consistent with this Memorandum and Order.

## BACKGROUND

On July 14, 2007, plaintiff was admitted to a mental health facility after a suicide attempt, where he reported prior suicide attempts and drug overdose, and stated that he felt "overwhelmed and helpless with his living situation." (ECF No. 27, Administrative Transcript ("Tr."), at 512, 517.) Plaintiff began to seek treatment from Dr. Kingsley Nwokeji, a psychiatrist, in March 2012. (*Id.* at 685-87.) Dr. Nwokeji diagnosed plaintiff with bipolar disorder, and assigned him a Global Assessment of Functioning score of 40. (*Id.*) Plaintiff continued to consult with Dr. Nwokeji throughout 2014, 2015, and 2016. (*Id.* at 766, 788-89, 792-98, 813-16, 826-27.)

On May 29, 2014, plaintiff sought treatment from Dr. Shawn Allen, a psychiatrist, who diagnosed plaintiff with bipolar disorder, cannabis dependence, and alcohol dependence.

(*Id.* at 430-32.)  Dr. Allen noted that plaintiff exhibited grandiosity bordering on delusion.  (*Id.*)  On August 26, 2014, Dr. Allen diagnosed plaintiff with mood disorder.  (*Id.* at 428-29.)  On October 1 and 23, 2014, Dr. Allen again diagnosed plaintiff with bipolar and mood disorder.  (*Id.* at 424-25, 426-27.)

On December 17, 2014, plaintiff attended a one-time consultative examination with Dr. Johanina McCormick, a psychologist.  (*Id.* at 466-70.)  Dr. McCormick noted that the result of this assessment "appear[ed] to be consistent with psychiatric problems" which "may significantly interfere [with plaintiff]'s ability to function on a daily basis."  (*Id.* at 469.)  Dr. McCormick diagnosed plaintiff with provisional "[u]nspecified bipolar and related disorder."  (*Id.*)

On February 18, 2015, plaintiff had a psychiatric assessment performed by Dr. Hina Fullar, who diagnosed him with schizoaffective disorder and cannabis dependence.  (*Id.* at 485-87.)

On April 27, 2016, plaintiff completed another one-time consultative exam with Dr. Jennifer Leach, who diagnosed plaintiff with unspecified schizophrenia spectrum or other psychotic disorder, and unspecified bipolar disorder.  (*Id.* at 497-506.)

Plaintiff first filed applications for Social Security Disability and Supplemental Security Income benefits pursuant to the Act on July 15, 2014, with an alleged onset date of April 24, 2013. (*Id.* at 300-13.)  The Commissioner denied the applications on January 13, 2015. (*Id.* at 225-32.)  Plaintiff appealed the decision on March 21, 2015, and requested a hearing by before an ALJ. (*Id.* at 233-34.)

A hearing was held on February 27, 2017 before ALJ Michael Friedman, during which vocational expert Raymond Cestar testified. (*Id.* at 35-56.)  The ALJ issued a denial on March 30, 2017. (*Id.* at 14-34.)  Thereafter, plaintiff requested a review by the Appeals Council on May 15, 2017. (*Id.* at 299.)  On February 15, 2018, the Appeals Council denied the request, finding no reason to review the ALJ's decision. (*Id.* at 1-6.)  This action in federal court followed. (*See generally* ECF No.1, Complaint.)

## LEGAL STANDARD

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow."  42 U.S.C. §§ 405(g), 1383(c)(3).  A district court, reviewing the final determination of the

4

Commissioner, must determine whether the correct legal standards
were applied and whether substantial evidence supports the
decision.  *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir.
1998).

A district court may set aside the Commissioner's
decision only if the factual findings are not supported by
substantial evidence or if the decision is based on legal error.
*Burgess v. Astrue,* 537 F.3d 117, 127 (2d Cir. 2008).
"Substantial evidence is 'more than a mere scintilla,'" and must
be relevant evidence that a "'reasonable mind might accept as
adequate to support a conclusion.'"  *Halloran v. Barnhart*, 362
F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 420
U.S. 389, 401 (1971)).  If there is substantial evidence in the
record to support the Commissioner's factual findings, those
findings must be upheld.  42 U.S.C. § 405(g).  Inquiry into
legal error requires the court to ask whether the plaintiff has
"had a full hearing under the [Commissioner's] regulations and
in accordance with the beneficent purposes of the [Social
Security] Act."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.
2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 10 (2d Cir. 1990)).
The reviewing court does not have the authority to conduct a *de
novo* review and may not substitute its own judgment for that of
the ALJ, even when it might have justifiably reached a different

result.  *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).

To receive disability benefits, claimants must be "disabled" within the meaning of the Act.  *See* 42 U.S.C. § 423(a), (d).  A claimant is disabled under the Act when he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *Shaw v. Chater*, 221 F.3d 126, 131–32 (2d Cir. 2000).  The impairment must be of "such severity" that the claimant is unable to do his previous work or engage in any other kind of substantial gainful work.  42 U.S.C. § 423(d)(2)(A).  "The Commissioner must consider the following in determining a claimant's entitlement to benefits: '(1) the objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability . . . ; and (4) the claimant's educational background, age, and work experience.'"  *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (quoting *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999)).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether the claimant's condition meets the Act's

definition of disability.  *See* 20 C.F.R. § 404.1520.  This process is essentially as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

*Burgess*, 537 F.3d at 120 (quotation and citation omitted); *see also* 20 C.F.R. § 404.152(a)(4).

During this five-step process, the Commissioner must consider whether "the combined effect of any such impairment . . . would be of sufficient severity to establish eligibility for Social Security benefits."  20 C.F.R. § 404.1523.  Further, if the Commissioner does find a combination of impairments, the combined impact of the impairments, including those that are not severe (as defined by the regulations), will be considered in the determination process.  20 C.F.R. § 416.945(a)(2).  In steps one through four of the sequential five-step framework, the claimant bears the "general burden of proving . . . disability." *Burgess*, 537 F.3d at 128.  At step five, the burden shifts from the claimant to the Commissioner, requiring that the Commissioner show that, in light of the claimant's RFC, age, education, and work experience, the claimant is "able to engage

in gainful employment within the national economy." *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

Lastly, federal regulations explicitly authorize a court, when reviewing decisions of the Commissioner, to order further proceedings when appropriate.  "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  Remand is warranted where "there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)).  Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision. *Pratts*, 94 F.3d at 39.

## DISCUSSION

### I.   The ALJ's Disability Determination

Using the five-step sequential process to determine whether a claimant is disabled, the ALJ determined at step one that plaintiff met the insured status requirements through September 30, 2016, and had not performed substantial gainful activity since his alleged onset date.  (Tr. at 19.)

At step two, the ALJ found that plaintiff suffered from severe impairments of bipolar disorder, adjustment

8

disorder, anxiety disorder, schizoaffective disorder, cannabis abuse, and ethyl alcohol abuse. (*Id.*)

At step three, the ALJ determined that from the alleged onset date in 2013 through the date of the decision, plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926), although the ALJ considered Listings 12.03 (schizophrenia spectrum and related disorders) and 12.04 (depressive and bipolar related disorders). (*Id.* at 20-21.) The ALJ found that the plaintiff had moderate, as opposed to "marked" or "extreme," limitations in interacting with others, concentrating, persisting, maintaining pace, adapting and managing oneself, and that the record did not establish that the plaintiff had only "minimal capacity to adapt to changes in the [plaintiff's] environment or to demands that are not already part of the [plaintiff's] daily life." (*Id.*) The ALJ also found that plaintiff would be capable of performing "a full range of work at all exertional levels but with the following non[-]exertional limitations: [plaintiff] is restricted to jobs involving simple, routine repetitive type tasks requiring only occasional contact with supervisors and coworkers and contact 2 to 4 times per day with the public." (*Id.* at 21-27.)

At step four, the ALJ concluded that the plaintiff was unable to perform any of his past relevant work as a customer service representative, technical support analyst, or material handler, based on the vocational expert's report that a person with plaintiff's RFC could not perform his past work. (*Id.* at 27-28.)

At step five, the ALJ found that plaintiff was capable of performing work that was available in the national economy from April 24, 2013 through the date of the decision, as a dishwasher, a park worker, or an assembler of small parts. (*Id.* at 28-29.)  Thus, the ALJ concluded that plaintiff was not "disabled" within the meaning of the Act. (*Id.*)

## II.  The ALJ Did Not Sufficiently Develop the Record or Provide "Good Reasons" For Assigning Little Weight to the Opinions of a Treating Psychiatrist

Plaintiff argues that the AJL violated the treating physician rule by according Dr. Nwokeji's opinions little weight, rather than controlling weight. (*See* ECF No. 22, Plaintiff's Brief ("Pl. Br."), at 2-7.)  The court agrees that the ALJ's reasons for assigning Dr. Nwokeji's opinions little weight were insufficient.  On remand, if the ALJ assigns Dr. Nwokeji's opinions less than controlling weight, the ALJ must adequately explain the specific reasons for doing so, and also consider whether some weight between controlling weight and little weight would be more appropriate.

Under the Commissioner's regulations, every medical
opinion in the administrative record must be evaluated,
"[r]egardless of its source," when determining whether a
claimant is disabled.  20 C.F.R. §§ 404.1527(c), 416.927(c).
The ALJ must evaluate each source, considering factors such as a
source's relationship with the claimant, the supportability of
the opinion, the consistency of the opinion with the record as a
whole, the specialization of the medical source, and any other
relevant factors that tend to support or contradict the medical
opinion.  20 C.F.R. § 404.1527(c).  The ALJ must finally
determine how much weight to assign each opinion based on these
factors.  *Id.*

Under the regulations in place at the time plaintiff
filed his claim, the ALJ was to "defer 'to the views of the
physician who has engaged in the primary treatment of the
claimant.'"  *Cichocki v. Astrue*, 534 F. Appx. 71, 74 (2d Cir.
2013) (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d
Cir. 2003)).[2]  "However, '[a] treating physician's statement that
the claimant is disabled cannot itself be determinative.'"  *Id.*

---

[2] The Commissioner has revised its rules to eliminate the treating physician
rule, and ALJs are now to weigh all medical evaluations, regardless of their
sources, based on how well supported they are and their consistency with the
remainder of the record.  *See* 20 C.F.R. §§ 404.1520b; 416.920c.  Claims filed
before March 27, 2017, however, are still subject to the treating physician
rule.  *See id.* § 404.1527(c)(2).  Plaintiff filed his claim on July 15, 2014.
Accordingly, the court applies the treating physician rule in the instant
case.  *See, e.g.*, *Conetta v. Berryhill*, 365 F. Supp. 3d 383, 395 n.5
(S.D.N.Y. 2019).

(quoting *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)).
"Rather, 'a treating source's opinion on the issue(s) of the
nature and severity of [a claimant's] impairment(s)' will be
given 'controlling weight' if the opinion is 'well-supported by
medically acceptable clinical and laboratory diagnostic
techniques and is not inconsistent with the other substantial
evidence in [the claimant's] case record.'"  *Id.* (quoting 20
C.F.R. § 404.1527(c)(2)); *see also Burgess*, 537 F.3d at 128
(describing this principle as the "treating physician" rule).  A
treating source is defined as a plaintiff's "own physician,
psychologist, or other acceptable medical source" who has
provided plaintiff "with medical treatment or evaluation and who
has, or has had, an ongoing treatment relationship with [the
plaintiff]."  20 C.F.R. § 404.1502; *see also Bailey v. Astrue*,
815 F. Supp. 2d 590, 597 (E.D.N.Y. 2011) ("A treating source's
medical opinion on the nature and severity of an impairment is
given controlling weight when it is supported by medically
acceptable clinical and laboratory diagnostic techniques and is
not inconsistent with other substantial evidence in the
record.").  Medically acceptable clinical and laboratory
diagnostic techniques include consideration of a "patient's
report of complaints, or history, [as] an essential diagnostic
tool."  *Green-Younger*, 335 F.3d at 107.

12

When a treating physician's opinion is not afforded controlling weight, the ALJ must "comprehensively set forth reasons for the weight assigned to a treating physician's opinion." *Halloran*, 362 F.3d at 33; *see also* 20 C.F.R. § 416.927(c)(2) (requiring the Commissioner to "always give good reasons in [its] notice of determination or decision for the weight [given to a] treating source's medical opinion"). The Commissioner's regulations enumerate several factors that may guide an ALJ's determination of what weight to give to a treating source's opinion: (1) the length, frequency, nature, and extent of the treating relationship, (2) the supportability of the treating source opinion, (3) the consistency of the opinion with the rest of the record, (4) the specialization of the treating physician, and (5) any other relevant factors. 20 C.F.R. § 416.927(c)(2)-(6). The ALJ is not required to cite each factor explicitly in the decision, but must ensure he applies the substance of the rule. *Halloran*, 362 F.3d at 32. The Second Circuit has "consistently held that the failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand." *Sanders v. Comm'r of Soc. Sec.*, 506 F. App'x 74, 77 (2d Cir. 2012); *see also Halloran*, 362 F.3d at 32–33.

Here, Dr. Nwokeji, with whom plaintiff began treatment in March 2012, opined on a form in connection with plaintiff's

application for welfare benefits in February 2015 that plaintiff
was unable to work for at least 12 months, and thus may be
entitled to long term disability benefits, because of
plaintiff's unstable condition and severe anxiety, panic
attacks, racing thoughts, and history of suicide attempts.  (Tr.
at 597-98.)  The ALJ found Dr. Nokeji's opinion "conclusory,"
and that it "did not provide [plaintiff]'s function by function
limitations."  (*Id.* at 26.)

Dr. Nwokeji's February 2015 opinion was provided on a
"Treating Physician's Wellness Plan Report" provided by the New
York City Department of Social Services, only two pages of which
were designed to be filled in by Dr. Nwokeji.  (*See id.* at 597-
98.)  Though Dr. Nwokeji detailed plaintiff's condition on the
form (*id.* at 597), the ALJ discounted the opinion because Dr.
Nwokeji did not include "function by function limitations" (*id.*
at 26).  "The ALJ has an obligation to develop the record in
light of the non-adversarial nature of the benefits proceedings,
regardless of whether the claimant is represented by counsel."
*Shaw*, 221 F.3d at 131.  "The ALJ's finding that [a treating
physician] did not submit a function-by-function assessment is
insufficient to justify discounting [the treating physician's]
opinion where it was the ALJ's duty to develop the record."
*Santiago v. Comm'r of Soc. Sec.*, 413 F. Supp. 3d 146, 156
(E.D.N.Y. 2018).  The duty to develop the record recognizes the

14

possibility that a doctor's failure to include detailed explanations in his opinion may be "because he did not know that the ALJ would consider it critical to the disposition of the case," not because such "support does not exist." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). Therefore, "an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." *Burgess*, 537 F.3d at 129 (quoting *Rosa*, 168 F.3d at 79).

The form Dr. Nwokeji completed did not request a function-by-function assessment. There is no evidence that the ALJ satisfied his duty to develop the record by requesting any additional information from Dr. Nwokeji before assigning his opinion little weight.

Dr. Nwokeji's later opinions, in April and November 2015, did include a function-by-function assessment, and noted that plaintiff was unable to work due to significant functional limitations. (*Id.* at 605-15.) The ALJ also accorded those opinions little weight, because he found the opinions were inconsistent with other evidence, i.e.: plaintiff's attention and concentration were found intact during formal testing, plaintiff indicated he could take public transportation independently and traveled to medical appointments unassisted, evidence showed that plaintiff had friends despite some evidence

of physical altercations, and plaintiff was well-maintained on
medication.  (*Id*. at 26.)

   Having the ability to perform basic daily activities
is not a good reason to discount a treating physician's opinion.
*Destina v. Berryhill*, 2018 WL 4964103, at *7, (E.D.N.Y. Oct. 15,
2018); *see also Cabibi v. Colvin*, 50 F. Supp. 3d 213, 238
(E.D.N.Y. 2014) ("Indeed, it is well-settled that the
performance of basic daily activities does not necessarily
contradict allegations of disability, as people should not be
penalized for enduring the pain of their disability in order to
care for themselves.") (quotation omitted).  Moreover, the ALJ
assigned these opinions *little* weight, when they would
ordinarily be due *controlling* weight; such a discount based on a
perceived inconsistency with one piece of evidence (attention
and concentration testing) does not "comprehensibly set forth
[the ALJ's] reasons for the weight assigned to [the] treating
physician's opinion."  *Burgess*, 539 F.3d, at 129 (quoting
*Halloran*, 362 F.3d at 33).  The ALJ did not provide specific
examples or a full explanation of how Dr. Nwokeji's opinions
were inconsistent with other medical records.  Thus, the ALJ
failed to "comprehensibly" provide reasons for the weight
assigned.

   Accordingly, the court finds that the ALJ erred by
failing to develop the record and provide good reasons for why

16

he did not give Dr. Nwokeji's opinions controlling weight.  On remand, if the ALJ assigns Dr. Nwokeji's opinions less than controlling weight, the ALJ must provide sufficiently good reasons for doing so, after filling in any gaps perceived in Dr. Nwokeji's opinions.

### III. The ALJ's RFC and Determination that Plaintiff Was Capable of Performing Jobs Existing in Significant Numbers Were Not Supported by Substantial Evidence

Plaintiff also persuasively argues that the ALJ erred by not taking into account all functional limitations in developing a hypothetical to present to the vocational expert regarding the types of jobs plaintiff would be able to perform. (*See* Pl. Br. at 11-13.)

At the last step of the disability determination, the Commissioner has the burden to prove that plaintiff is capable of performing other jobs existing in significant numbers in the national economy in light of plaintiff's RFC, age, education, and past relevant work. 20 C.F.R. §§ 416.920, 416.960.  In relying on a vocational expert's testimony to satisfy the burden, posing a "hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony." *Gray v. Astrue*, 2009 WL 790942, at *14 (N.D.N.Y. Mar. 20, 2009); *see also De Leon v. Sec'y of Health & Human Servs.*, 734 F.2d 930, 936 (2d Cir. 1984) ("In positing hypothetical questions to the

vocational consultant," the ALJ must "present the full extent of [the claimant's] disabilities.").

In this case, the ALJ posed a hypothetical question, asking the vocational expert to assume that an individual had "unrestricted physical RFC, but [is] limited to jobs involving simple, routine, repetitive type tasks . . . requiring only occasional contact with supervisors and co-workers, and contact two to four times per day with the public."  (Tr. at 52-53.) This hypothetical question posed to the vocational expert did not accurately reflect all of plaintiff's impairments, limitations, and restrictions.  *See Melligan v. Chater*, 1996 WL 1015417, at *8 (W.D.N.Y. Nov. 14, 1996) ("In order to rely on a vocational expert's opinion: 'the hypothetical question posed to a vocational expert must fully set forth a claimant's impairments.'") (quoting *Totz v. Sullivan*, 961 F.2d 727, 730 (8th Cir.1992)).

First, the RFC in the ALJ's hypothetical failed to account for plaintiff's inability to tolerate stress.  "Because stress is 'highly individualized,' mentally impaired individuals 'may have difficulty meeting the requirements of even so-called 'low-stress' jobs,' and the Commissioner must therefore make specific findings about the nature of a claimant's stress, the circumstances that trigger it, and how those factors affect his ability to work."  *Stadler v. Barnhart*, 464 F. Supp. 2d 183,

188–89 (W.D.N.Y. 2006) (citing S.S.R. 85-15, 1985 WL 56857
(S.S.A. Jan 1, 1985) and *Welch v. Chater*, 923 F. Supp. 17, 21
(W.D.N.Y. 1996)).  Thus, the obligation to make specific
findings cannot be satisfied "by merely indicating that the
claimant can perform simple, unskilled work."  *Almodovar v.
Berryhill*, 2019 WL 1313883, at *14 (S.D.N.Y. Mar. 22, 2019)
(quotation omitted).  Accordingly, an ALJ must specifically
inquire into and analyze a claimant's ability to manage stress.
*See Haymond v. Colvin*, 2014 WL 2048172, at *9 (W.D.N.Y. May 19,
2014).

        Dr. Nwokeji, Dr. Fullar, Dr. McCormick, and Dr. Leach
all opined that plaintiff had limitations in dealing with
stress.  Dr. McCormick found plaintiff to be "markedly impaired
appropriately dealing with stress."  (Tr. at 469.)  Dr. Fullar
observed "limited or maladaptive coping skills to deal with
emotional distress."  (*Id*. at 488.)  Dr. Leach found "marked
limitations . . . dealing appropriately with stress."  (*Id*. at
502.)  Finally, Dr. Nwokeji found that plaintiff had limited
ability to deal with normal work stress in unskilled work and
had seriously limited ability in dealing with stress of semi-
skilled and skilled work.  (*Id*. at 607, 612.)  The ALJ, however,
made no specific findings about the nature of plaintiff's
ability to handle stress or its triggering circumstances, thus
failing his obligation to evaluate plaintiff's stress.  *See*

*Almodovar*, 2019 WL 1313883, at *15 ("On remand, the ALJ
must . . . specifically consider 'what is the appropriate
finding as to the claimant's ability to tolerate stress, how
that finding impacts [plaintiff's] RFC, and what jobs would be
available based on that RFC.'") (quoting *Valentin v. Berryhill*,
2017 WL 3917004, at *17 (S.D.N.Y. Sep. 6, 2017)).

Second, the RFC in the ALJ's hypothetical failed to
account for plaintiff's inability to maintain adequate social
functioning.  Dr. McCormick opined that plaintiff was "markedly
impaired" relating with others.  (Tr. at 469.)  Dr. Fullar
opined that the plaintiff had "marked limitations in his ability
to . . . engage in stable social interactions or
relationships . . . which is imperative for gainful employment."
(*Id*. at 488.)  Dr. Leach noted the plaintiff "presents marked
limitations . . . relating adequately with others."  (*Id*. at
502.)  Finally, Dr. Nwokeji found plaintiff has marked
limitation in "maintaining social functioning."  (*Id*. at 608.)
The vocational expert testified that "no jobs" would be
available for a person who has inadequate social functioning or
has difficulty interacting for more than ten percent of the
workday.  (*Id*. at 55.)  Thus, it was error for the ALJ to rely
on an RFC and a hypothetical that did not fully include
plaintiff's social limitations.

Third, the RFC in the ALJ's hypothetical failed to
account for plaintiff's inability to maintain a schedule or
function on a sustained basis.  Again, the medical opinions
consistently noted plaintiff's marked limitations in this
respect.  Dr. McCormick opined that the plaintiff had "marked
impairment maintaining a regular schedule."  (*Id.* at 469.)  Dr.
Fullar opined that the plaintiff had "marked limitation in his
ability to . . . maintain employment . . . [and] engage in
activities requiring . . . regularity."  (*Id.* at 488.)  Dr.
Leach noted that the plaintiff "present[ed] marked limitation
maintaining a regular schedule."  (*Id.* at 502.)  Finally, Dr.
Nwokeji estimated that the plaintiff would be absent for more
than four days per month.  (*Id.* at 615.)  Additionally, the
vocational expert testified that unscheduled absences of
"anything more than once per month would be considered
excessive," and "anybody who's off task 10 percent or more . . .
would be unable to perform at a consistent pace, [and] would not
meet quality standards or productivity on any sustained basis."
(*Id.* at 54.)  In other words, such a person could not "be
gainfully employed."  (*Id.*)  Despite the limitations noted by
all medical sources, the ALJ's ultimate hypothetical described
an individual who was "limited to jobs involving simple,
routine, repetitive type tasks."  (*Id.* at 52-53.)  This
hypothetical did not account for the limitation on plaintiff's

21

ability to maintain a schedule, and the ALJ erred by failing to include that limitation, as well as the other aforementioned limitations, when seeking guidance from the vocational expert.

Because the ALJ's RFC failed to take into account all of the evidence of plaintiff's functional limitations, his determination that plaintiff was capable of performing jobs that existed in significant numbers in the national economy was not supported by substantial evidence.

## CONCLUSION

For the reasons stated above, plaintiff's motion for judgment on the pleadings is GRANTED, and defendant's cross-motion for judgment on the pleadings is DENIED.  This action is REMANDED for further proceedings consistent with this Memorandum and Order.  The clerk of court is respectfully directed to enter judgment in favor of plaintiff and close this case.

**SO ORDERED.**

Dated:    Brooklyn, New York
          July 13, 2020


                                    _____
                                            /s/
                                    HON. KIYO A. MATSUMOTO
                                    United States District Judge